UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Civil No. 15-CR-31 (SRN) |
| v. | MEMORANDUM OPINION AND ORDER |
| Mark David Sampica, | |
| Defendant. | |

Kimberly A. Svendsen, United States Attorney's Office, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for Plaintiff

Mark David Sampica, #08 088 041, Federal Prison Camp, P.O. Box. 1000, Duluth, Minnesota 55814, Pro Se

_____

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Mark David Sampica's Pro Se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") [Doc. No. 51]. The Government opposes Defendant's motion. (Govt.'s Opp'n Mem. [Doc. No. 904].) Defendant also filed a reply memorandum to the Government's response to his motion.[1] (Reply [Doc. No. 58].) Based on a review of the file, record and proceedings therein, and for the reasons set forth below, the Court denies Defendant's

---

[1] The Court understands that the reply memorandum was incorrectly docketed in Sampica's appeal pending before the Eighth Circuit Court of Appeals and was subsequently filed in this action. (See Sampica's Letter of 10/30/15 [Doc. No. 59].) Because Sampica met the filing deadline set forth in this Court's August 24, 2015 Order [Doc. No. 53], the reply memorandum was timely filed and the Court considers it here.

§ 2255 motion.

## I.  BACKGROUND

In January 2015, the Government charged Sampica by an Information with one count of mail fraud, in violation of 18 U.S.C. § 1341, for fraudulently claiming $230,919 in out-of-pocket expenses for claimed damage to a Maple Grove, Minnesota residence from a class action settlement fund in In re: Zurn Pex Plumbing Products Liability Litigation, No. 08-MD-1958 (ADM/AJB) ("Zurn Pex Litigation").  (Information ¶ 1 [Doc. No. 1].)   The Information alleged that Sampica submitted eight false claim forms and falsified supporting documentation to the Zurn Pex Claims Administrator, claiming to have paid a total of $722,972.99 in out-of-pocket expenses as a result of leaks caused by defective Zurn plumbing fixtures.  (Id. ¶¶ 5, 7.)  Among the allegations, the Government alleged that Sampica claimed to have incurred damages at properties he did not own on the dates of the claimed losses, claimed to have incurred damages from leaks that did not occur, and made several false claims in the names of his three minor sons.  (Id. ¶¶ 6.)

In the proceedings before this Court, Defendant was represented by retained counsel, attorney Thomas Bauer.  On February 23, 2015, Sampica pleaded guilty to the charge in the Information and waived prosecution by Indictment.  (Minutes of 2/23/15 Hearing [Doc. No. 6]; Waiver of Indictment [Doc. No. 9].)  At the change of plea hearing, Sampica testified that he was satisfied with Mr. Bauer's legal services and that he had fully discussed the charges against him with Mr. Bauer.  (2/23/15 Hrng. Tr. at 5-6; 10 [Doc. No. 61].)  Likewise, Mr. Bauer stated that he had investigated his client's case and

2

discussed it with him.  (Id. at 5-7.)   These discussions included a review of the range of punishments.  (Id. at 7.)

At the change of plea hearing, Sampica addressed his plea agreement with the Government.  He admitted that he had submitted eight claim forms to the Zurn Pex Claims Administrator, falsely claiming to have paid a total of $722,972.99 in out-of-pocket expenses when he had not, and seeking reimbursement in that amount.  (Id. at 25-26.)  As part of this fraudulent scheme, Sampica admitted that he used the United States mail to submit a false claim for $230,919 in out-of-pocket expenses.  (Id. at 26-27.)

Sampica also understood and agreed to the relevant Sentencing Guidelines calculations, which included a base offense level of 7, increased by 14 levels based on an amount of loss between $400,000 and $1 million, and decreased by three levels for acceptance of responsibility.  (Id. at 15.)  With a criminal history category of I, Sampica and the Government stipulated to a 27- to 33-month Guidelines range, with each party reserving the right to request a variance.  (Id. at 16-17.)  Defendant waived the right to appeal any sentence less than 33 months.  (Id. at 17-18.)

The Court found that Sampica was mentally competent and capable of making an informed plea.  (Id. at 28-29.)  In addition, the Court found that his plea of guilty was made freely and voluntarily and was supported by independent facts in the record supporting the elements of the offense charged.  (Id.)  The Court accepted Sampica's guilty plea and found him guilty as charged.  (Id. at 29.)

The Presentence Investigation Report ("PSR") listed the same offense level

computation to which the parties had stipulated in their plea agreement. At the June 23, 2015 sentencing hearing, neither Defendant nor the Government objected to the PSR. (6/23/15 Hrng. Tr. at 3 [Doc. No. 62].) Nor did the parties object to the Court's calculation of the Sentencing Guidelines range. (Id. at 4.) The Court adopted the parties' plea agreement and found that the applicable Sentencing Guidelines range was 27-33 months. (Id. at 3-4.) However, the Court varied downward and sentenced Sampica to an 18-month term of imprisonment. (See Sentencing J. at 2 [Doc. No. 22].)

      A.      **Direct Appeal**

On June 25, 2015, Defendant filed a direct appeal of his sentence with the Eighth Circuit Court of Appeals, arguing that his below-range sentence "was imposed as a result of an incorrect application of the sentencing guidelines." (6/25/15 Pro Se Notice of Appeal at 1 [Doc. No. 24].) Although the appeal was filed in a pro se capacity, the Eighth Circuit subsequently appointed Mr. Bauer as appellate counsel under the Criminal Justice Act. (United States v. Sampica, No. 15-2513 (8th Cir. July 15, 2015).) Sampica moved for reassignment of counsel (id., Def.'s Mot. for Reassignment of Counsel), which the Eighth Circuit denied. (Id. (8th Cir. July 28, 2015).) The Government moved to dismiss the appeal, arguing that, as reflected in the Plea Agreement, Sampica had waived his right to appeal, his waiver was knowing and voluntary, and the enforcement of the waiver would not result in a miscarriage of justice. (Id., Gov't's Mot. to Dismiss Appeal.) On August 18, 2015, the Eighth Circuit granted the Government's motion and dismissed Sampica's direct appeal of his sentence. (Id., Judgment (8th Cir. Aug. 18, 2015) [Doc.

No. 52].)

### B. Pro Se Motion to District Court Pursuant to 18 U.S.C. § 3143(b) for Emergency Stay of Imprisonment Pending Appeal

During the pendency of his direct appeal, on July 8, 2015, Defendant also filed with this Court a pro se motion entitled "Motion To/For Emergency Stay of Sentence of Imprisonment Pending Appeal" [Doc. No. 33], arguing that his sentence should be stayed pursuant to 18 U.S.C. § 3143(b). Section 3143(b) provides for the release or detention of a defendant pending sentence or appeal. Just as in Sampica's then-pending direct appeal of his sentence to the Eighth Circuit, he argued to this Court that his sentence should be stayed because it was based on an incorrect application of the Sentencing Guidelines. (Def.'s Mot. for Emergency Stay at 1-2 [Doc. No. 33].) On July 13, 2015, this Court denied Sampica's motion, finding that Sampica failed to raise a substantial question of law or fact likely to result in: (i) reversal; (ii) an order for a new trial; (iii) a sentence that did not include a term of imprisonment; or (iv) a reduced sentence to a term of imprisonment less than the total of time already served plus the expected duration of the appeal process.[2] (Order of 7/13/15 at 4 [Doc. No. 38]) (citing § 3143(b)(B)(i)-(iv)).

Defendant then filed a pro se emergency motion with the Eighth Circuit, appealing this Court's July 13, 2015 Order. (7/16/15 Notice of Appeal at 1 [Doc. No. 42].) The

---

[2] As noted in the ruling, this Court found that it had jurisdiction to entertain Sampica's § 3143 motion, although he had already filed a direct appeal, because § 3143 confers limited jurisdiction upon district courts to decide whether a person in Defendant's position may be released pending appeal. (Order of 7/13/15 at 2-3 [Doc. No. 38]) (citations omitted).

Government moved to strike Sampica's pro se emergency motion, because Sampica was a represented party.  (United States v. Sampica, No. 15-2560, Gov't's Mot. to Strike & Opp'n Mem. at 6 (8th Cir. July 24, 2015) (citing United States v. Jones, 698 F.3d 1048, 1051-52 (8th Cir. 2012) ("Generally, it is Eighth Circuit policy not to address issues raised by a defendant in pro se filings with this Court when he is represented by counsel.")  Alternatively, the Government argued that Sampica's appeal of the July 13, 2015 Order should be denied on the merits and this Court's ruling should be affirmed. (Id. at 6-10.)  On August 5, 2015, the Eighth Circuit summarily affirmed this Court's July 13, 2015 Order.  (Id., Judgment (8th Cir. Aug. 5, 2015 [Doc. No. 50].)

### C.     Pro Se Motion Pursuant to 28 U.S.C. § 2255

Defendant filed the instant pro se § 2255 motion [Doc. No. 51] on August 13, 2015, while his direct appeal was pending.  In the § 2255 motion, Sampica again asserts that his sentence was imposed as a result of an incorrect application of the Sentencing Guidelines.  (Sec. 2255 Mot. [Doc. No. 51].)  Specifically, he claims the following:

> (1) Intended "loss" of $722,972.99 used for offense level computation was not the correct amount documented in actual Count 1.  Correct amount (as documented in Charge 1) is: $230,919.
>
> (2) Charge 1/Count 1 amount of $230,919 does not take into account the "damage limits" contained/documented in the Zurn-Pex claim form instructions.  Claim form damage limit is: $100,000, which is further reduced to 60% (refer to Zurn-Pex FAQ #7): ". . . initial payment made for leaks and occlusion claims will be 60% of the eligible claim ($100,000)."
>
> These corrections change the intended loss in Count 1 to: $60,000, which equates to a special offense characteristic "6."  Resulting in . . . a total offense level: 10 which corresponds to a sentencing guideline of 6-12

months - 33% departure = 4.03 months.

(Id.)

Although Sampica identifies no other ground of relief in his motion, he notes that he contacted his attorney and probation officer regarding these "incorrect dollar amount[s]" in March and April 2015, but "NO ACTION was taken by either party." (Id. ¶ 13.)

The Government argues that Defendant's motion should be denied because the Eighth Circuit has previously considered and rejected his claim. (Gov't's Opp'n Mem. at 4 [Doc. No. 56].) Morever, the Government asserts that even if the Court construed Sampica's motion as alleging the ineffective assistance of counsel and considered it on the merits, his claim would still fail. (Id.)

In reply, Sampica argues that: (1) the Eighth Circuit considered and rejected his appeal only on procedural grounds; (2) he tried to raise the substantive issue concerning the allegedly incorrect Guidelines calculation prior to sentencing, but his counsel failed to raise it; (3) the Government is "clearly wrong on the amount of intended loss," which totals $366,919, at most; and (4) he filed a § 2255 motion because he could not previously assert an ineffectiveness of assistance of counsel claim. (Def.'s Reply at 1-2 [Doc. No. 58].)

## II.   DISCUSSION

### A.   Standard for Relief

28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

While § 2255 generally affords relief, it is only available in limited circumstances. The Eighth Circuit has held that:

> [r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice. A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error.

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir.1996) (citation omitted).

Alternatively, any procedural default can be excused if the defendant is actually innocent. Bousley v. United States, 523 U.S. 614, 622 (1998).

### B.   Defendant's Sentencing Guidelines Claim

As to Defendant's claim that his sentence should be vacated or corrected due to an incorrect application of the Sentencing Guidelines (Sec. 2255 Mot. ¶ 12 [Doc. No. 51]), Sampica raised this issue on direct appeal (6/25/15 Notice of Appeal [Doc. No. 24]), and in his motion for an emergency stay of this Court's July 13, 2015 ruling [Doc. No. 33].

Claims that were raised and decided on direct appeal cannot be re-litigated on a § 2255 motion to vacate. Dall v. United States, 957 F.2d 571, 572 (8th Cir. 1992) (citing United States v. Shabazz, 657 F.2d 189, 190 (8th Cir. 1981) (per curiam)). While the Eighth Circuit summarily dismissed Sampica's direct appeal, the court's ruling could be construed as an implicit rejection of Sampica's Sentencing Guidelines argument. See Brown v. United States, 181 F.3d 99 (Table), 1999 WL 313848 (6th Cir. May 6, 1999) (finding that appellate court implicitly rejected petitioner's argument in denying direct appeal and affirming the district court's judgment).

But setting aside whether Defendant's appeal was substantively decided and assuming that his § 2255 claim is procedurally cognizable, § 2255 "does not provide relief for errors made in interpreting the Sentencing Guidelines . . . so long as the defendant did not receive a sentence in excess of the statutory maximum." United States v. Derden, No. No. 12-CR-0012 (PJS/SER), 2014 WL 5489374, at *2 (D. Minn. Oct. 30, 2014) (citing Sun Bear v. United States, 644 F.3d 700, 705-06 (8th Cir. 2011) (en banc); Meirovitz v. United States, 688 F.3d 369, 371-72 (8th Cir. 2012); Donnell v. United States, 765 F.3d 817, 819 n. 2 (8th Cir. 2014)). The crime of mail fraud alleged in Count 1 of the Information, to which Sampica pleaded guilty, carries a maximum sentence of 20 years. 18 U.S.C. § 1341. Because Sampica's sentence did not exceed the statutory maximum, he cannot use § 2255 to raise an alleged error in calculating his Sentencing Guidelines range. Derden, 2014 WL 5489374, at *2.

Furthermore, even if he could challenge this Court's interpretation of the

9

Sentencing Guidelines, Sampica's claim fails on the merits. Sampica contends that the amount-of-loss calculation should have been lower for two reasons: (1) the loss amount should have included only the amount of the false claim to which he pleaded guilty ($230,919), not the amounts of the other seven false claims that he submitted to the Zurn Pex Claims Administrator; and (2) the loss amount for that single claim should be further reduced to $60,000 because of Zurn Pex's own claim limits, reflected on documentation accompanying the claim forms. (Sec. 2255 Mot. at 4 [Doc. No. 51].)

The Sentencing Guidelines provide that specific offense characteristics shall be determined based on "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense," in addition to "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." Federal Sentencing Guidelines Manual § 1B1.3(a)(1)(A) & (a)(2) (2015). The Eighth Circuit has interpreted the term "offense of conviction" as "the substantive offense to which the defendant pleads guilty." United States v. Morton, 957 F.2d 577, 579 (8th Cir. 1992).

The commentary to § 1B1.3 addresses the type of conduct that may be considered as the "same course of conduct or common scheme or plan," stating:

> Subsection (a)(2) provides for consideration of a broader range of conduct with respect to one class of offenses, primarily certain property, tax, fraud and drug offenses for which the guidelines depend substantially on quantity, than with respect to other offenses such as assault, robbery and burglary. The distinction is made on the basis of § 3D1.2(d), which provides for

> grouping together (i.e., treating as a single count) all counts charging offenses of a type covered by this subsection. However, the applicability of subsection (a)(2) does not depend upon whether multiple counts are alleged. Thus, in an embezzlement case, for example, embezzled funds that may not be specified in any count of conviction are nonetheless included in determining the offense level if they were part of the same course of conduct or part of the same scheme or plan as the count of conviction. Similarly, in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.

Federal Sentencing Guidelines Manual § 1B1.3, comment. (n.10) (2015).

Consistent with this approach, the Eighth Circuit has held that if the "offense of conviction" is mail fraud, "the resulting loss from a related conspiracy may be included in the calculation if it involves the same course of conduct or common scheme or plan," including conduct in dismissed counts. United States v. Berndt, 86 F.3d 803, 811 (8th Cir. 1996). Similarly, the defendants in United States v. Radtke, 415 F.3d 826, 841 (8th Cir. 2005), who were convicted of conspiracy to defraud the United States and the IRS, mail fraud, and tax law violations, challenged the district court's calculation of loss at sentencing because it included losses from nonpayment of union benefit contributions that were "only obliquely referenced in the indictment." The Eighth Circuit held that this oblique reference did not preclude the sentencing court from considering such conduct in determining the amount of loss under the Guidelines. Id. To the contrary, the court stated, "Relevant conduct under the guidelines need not be charged to be considered in sentencing, and it includes all acts and omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." Id. (quoting Federal

11

Sentencing Guidelines Manual § 1B1.3(a)(2)).

At Sampica's change of plea hearing, he admitted to devising and participating in a scheme to defraud. Specifically, he admitted to making hundreds of thousands of dollars in false claims to the Zurn Pex class action settlement fund. (2/23/15 Hrng. Tr. at 23-26 [Doc. No. 61].) He further admitted that: (1) by using eight claim forms, he falsely claimed to have paid a total of $722,972.99 in out-of-pocket expenses; (2) he had not actually paid that amount; and (3) he sought reimbursement in that amount. (Id. at 26.) Not only did Sampica admit to this conduct, the factual allegations in the Information specifically alleged it, including the $722,972.99 total intended loss. (Information ¶¶ 1-7 [Doc. No. 1].) The $230,919 false claim that Defendant submitted on or about January 14, 2014, described in Count 1 of the Information and to which Sampica pleaded guilty, is merely one example of Defendant's scheme to defraud. The entire amount of false out-of-pocket expenses that Sampica claimed to have paid and for which he sought reimbursement – $722,972.99 – qualifies as relevant conduct and counts toward the loss amount. This amount was part of the same scheme or plan as the offense of conviction. Sampica's scheme involved the claim form underlying the count to which he pleaded guilty (Count 1) and the seven other forms that were part of his fraud scheme.

In addition, the fact that Zurn Pex might have limited its payments to $60,000 per claim does not reduce Defendant's intended loss amount because under the Sentencing Guidelines, "loss is the greater of actual or intended loss." Federal Sentencing Guidelines Manual § 2B1.1(b), comment. (n.3(A)) (2015); United States v. Lemons, 792 F.3d 941,

950 (8th Cir. 2015) ("When calculating intended loss, the appropriate inquiry is what the loss would have been if the defendant had not been caught.") (quoting United States v. Frisch, 704 F.3d 541, 544 (8th Cir. 2013)).

### C. Ineffective Assistance of Counsel

Although Sampica does not explicitly raise ineffective assistance of counsel as a ground for his § 2255 motion, the Court construes his motion to assert such a claim. (See Sec. 2255 Mot. ¶ 13 [Doc. No. 51].) In order to obtain relief for ineffective assistance of counsel, Defendant must establish both that his counsel's performance "fell below an objective standard of reasonableness," and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 688 (1984). Defendant bears the burden of establishing to a reasonably probability that, but for his counsel's errors, the result of the proceeding would have been different. Id. This is a "heavy burden," Apfel, 97 F.3d at 1076, requiring a showing that the deficiency in counsel's performance was "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

The basis for Sampica's ineffective assistance claim relates to counsel's handling of the calculated loss amount. For all of the reasons discussed above, Sampica cannot prevail on any claim that Mr. Bauer's failure to object to the Sentencing Guidelines calculation constituted ineffective assistance nor that Mr. Bauer was somehow ineffective in his role as appellate counsel as to this claim. Moreover, the facts of the case belie a claim of ineffective assistance, as Sampica expressed his satisfaction with counsel and a

thorough understanding of his guilty plea and the calculations underlying his sentence. Accordingly, Defendant's claim for relief on the basis of ineffective assistance of counsel is denied.[3]

### D. Certificate of Appealability

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(B). A court cannot grant a certificate of appealability unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court has considered whether the issuance of a certificate is appropriate here and finds that no issue raised is "debatable among reasonable jurists." Fleiger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994) (citing Lozada v. Deeds, 498 U.S. 430, 432 (1991) (per curiam)). Accordingly, the Court declines to issue a certificate of appealability.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Pro Se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. No. 51] is **DENIED**;

2. No evidentiary hearing is required in this matter; and

---

[3] As Defendant's claims do not entitle him to relief and are contradicted by the record and the law, his § 2255 motion is denied without an evidentiary hearing. Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (holding that a § 2255 petition can be dismissed without a hearing if the petitioner's allegations, even accepted as true, would not entitle the petitioner to relief, or the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact.)

3. A Certificate of Appealability is **DENIED.**

Dated: December 28, 2015

s/Susan Richard Nelson<br>
SUSAN RICHARD NELSON<br>
United States District Judge